**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 08-cv-02282-REB-CBS

COLONIAL SAVINGS, F.A., Federal Savings Association,

      Plaintiff,

v.

PUBLIC SERVICE EMPLOYEES CREDIT UNION, doing business as PUBLIC
SERVICE CREDIT UNION, a Colorado nonprofit corporation,
NORLARCO CREDIT UNION, a Colorado nonprofit corporation, and
THE NATIONAL CREDIT UNION ADMINISTRATION, as liquidating agent for Norlarco
Credit Union,

      Defendants.

---

**ORDER CONCERNING MOTIONS FOR SUMMARY JUDGMENT**

---

**Blackburn, J.**

      This matter is before me on the following motions: (1) **Motion for Summary
Judgment Filed by NCUA as Liquidating Agent for Norlarco Credit Union** [#72][1]
filed October 30, 2009; (2) **Motion for Summary Judgment on all Counterclaims of
Defendant, Public Service Employees Credit Union, Against Plaintiff, Colonial
Savings, F.A.** [#74] filed October 30, 2009; (3) **Plaintiff Colonial Savings, F.A.'s
Motion for Summary Judgment** [#75] filed October 30, 2009; and (4) **First Amended
Motion for Summary Judgment on Plaintiff's Claims by Defendant, Public Service
Employees Credit Union** [#79] filed November 4, 2009.  The relevant parties have filed
responses and replies addressing each of the four motions.  I grant the motions for

---

[1]   "[#72]" is an example of the convention I use to identify the docket number assigned to a
specific paper by the court's case management and electronic case filing system (CM/ECF). I use this
convention throughout this order.

summary judgment filed by Public Service Employees Credit Union and the National

Credit Union Administration, and I deny the motion for summary judgment filed by

Colonial Savings.[2]

## I.  JURISDICTION

I have jurisdiction over this case under 28 U.S.C. § 1331 (federal question), 28

U.S.C. § 1332 (diversity), and 12 U.S.C. § 1787(b)(6)(A) (Federal Credit Union Act).

## II.  STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material

fact and the movant is entitled to judgment as a matter of law.  **FED.R.CIV.P.** 56(c);

**Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986).  A dispute is "genuine" if the issue

could be resolved in favor of either party.  **Matsushita Electric Industrial Co., Ltd. v.**

**Zenith Radio Corp.**, 475 U.S. 574, 586 (1986); **Farthing v. City of Shawnee**, 39 F.3d

1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome

of the case.  **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248  (1986); **Farthing**, 39

F.3d at 1134.

A movant who bears the burden of proof at trial must submit evidence to

establish every essential element of its claim or affirmative defense.  **See In re**

**Ribozyme Pharmaceuticals, Inc. Securities Litigation**, 209 F.Supp.2d 1106, 1111

(D. Colo. 2002).  Once the motion has been supported properly, the burden shifts to the

nonmovant to show, by tendering depositions, affidavits, and other competent evidence,

---

[2] The issues raised by and inherent to the motions for summary judgment are fully briefed,
obviating the necessity for evidentiary hearing or oral argument. Thus, the motions stand submitted on the
papers. *Cf.* **FED. R. CIV. P. 56(c)** and **(d)**. *Geear v. Boulder Cmty. Hosp.*, 844 F.2d 764, 766 (10th
Cir.1988) (holding that the hearing requirement for summary judgment motions is satisfied by court's
review of documents submitted by parties).

that summary judgment is not proper. ***Concrete Works, Inc. v. City & County of***

***Denver***, 36 F.3d 1513, 1518 (10th Cir. 1994), ***cert. denied***, 514 U.S. 1004 (1995).  All

the evidence must be viewed in the light most favorable to the party opposing the

motion. ***Simms v. Oklahoma ex rel Department of Mental Health and Substance***

***Abuse Services***, 165 F.3d 1321, 1326 (10th Cir.), ***cert. denied***, 528 U.S. 815 (1999).

I have reviewed carefully the record in this case.  I conclude that the facts

summarized in this order are undisputed.  This case does not involve a dispute about

relevant facts.  Rather, the parties disagree about how the relevant contracts should be

interpreted, a question that presents an issue of law, and how the law applies to the

undisputed facts.  This case is ripe for resolution on the parties' motions for summary

judgment.

### III. BACKGROUND

Norlarco Credit Union was a state chartered and federally insured credit union in

Fort Collins, Colorado. In July, 2001, Norlarco and plaintiff, Colonial Savings, F.A.,

executed two written agreements: a Whole Loan Servicing Agreement and a USA

Mortgage-Ease III Contract.  The Whole Loan Servicing Agreement is Exhibit A to

Colonial's motion for summary judgment [#75], and the Mortgage-Ease III Contract  is

Exhibit B to that motion.  I will refer to and cite these documents in this order as the

Servicing Agreement and the Mortgage Ease Agreement.  Under the Mortgage Ease

Agreement and the Servicing Agreement, Colonial was engaged to originate, in

cooperation with Norlarco, residential mortgage[3] loans for Norlarco's credit union

---

[3]  The parties use the word "mortgage" to describe the loans at issue in this case, probably
because the security for the loans is residential real estate.  I note that, under Colorado law, a security
interest in real estate is created by a deed of trust rather than a mortgage.  However, I adopt the parties'

customers.  In addition, Colonial was engaged to service the mortgage loans.  Servicing

the loans included collecting monthly payments, keeping records of interest and

principal paid on each loan, maintaining escrow accounts for each loan, reporting the

status of each loan to Norlarco, and paying to Norlarco the principal and interest due to

Norlarco.  *Servicing Agreement*, ¶ IX.  Colonial was to retain from each monthly interest

payment on each loan the "earned portion of the servicing fee" as well as any transfer

fees and late charges collected from the party who was obligated on the loan.  *Id.*, ¶ IX

D, XV.

       After the mortgage loans were closed, the loans were placed in Norlarco's loan

portfolio or were sold into the national secondary mortgage market.  *Mortgage Ease

Agreement*, ¶ 11; *Colonial's motion for summary judgment* [#75], Exhibit C (Colonial's

Affidavit), ¶ 9.   The loans at issue in this case were made using Norlarco's funds and

the loan documents, such as the promissory note and deed of trust, were drawn in

Norlarco's name.  *Id.*, ¶¶ 21 - 23.  These loans were retained in Norlarco's portfolio and

were not sold on the secondary market.  *Id.*  I will refer to these loans as the Portfolio

Loans.  Loans in addition to the Portfolio Loans were created and managed under the

agreements, but those additional loans are not at issue in this case.  After each of the

Portfolio Loans was closed, Colonial immediately began to service the loan, collecting

payments, maintaining escrow accounts, and delivering payments to Norlarco, after

retaining Colonial's servicing fee.

        In May, 2007, Norlarco was placed into a conservatorship.  On February 29,

---

use of the word mortgage because, for the purposes of this case, use of that term will not create any
confusion.

2008, the National Credit Union Administration (NCUA) put Norlarco into involuntary liquidation and appointed itself as the liquidating agent for Norlarco.  The NCUA has the power to liquidate an insolvent Credit Union under the Federal Credit Union Act, 12 U.S.C. §§ 1751 - 1795k.  The NUCA's authority under 12 U.S.C. § 1787 is at issue specifically in this case.  On the same day, February 29, 2008, the NCUA entered into a Purchase and Assumption Agreement (P & A Agreement) with Public Service Employees Credit Union (PSCU).  *PSCU's motion for summary judgment* [#79], Exhibit B-3.  Under the P & A Agreement, PSCU purchased from the NCUA certain Norlarco assets and agreed to assume certain Norlarco liabilities.  The assets purchased by PSCU are listed on Schedules A & B of the P & A Agreement, and the liabilities assumed are listed on Schedules A & F of the P & A Agreement.  *Id.*[4]

Among the assets purchased by PSCU were the Portfolio Loans. These loans were held in Norlarco's loan portfolio at the time of the liquidation.  The rights and obligations of PSCU and Colonial concerning the Portfolio Loans are the key issue in this case.  Colonial claims it has a right to continue servicing the Portfolio Loans, just as Colonial had done prior to the liquidation of Norlarco, and to be paid for those services.  In fact, Colonial claims it has a valid property interest in each of the loans, an interest known as a mortgage servicing right.  On the other hand, PSCU and the NCUA argue that PSCU never assumed Norlarco's liabilities under the Mortgage Ease Agreement and the Loan Servicing Agreement and that, thus, PSCU is not obligated to continue to

---

[4] I note that Schedule A to the P & A Agreement is not included in the copy of that agreement included with Public Service's motion for summary judgment, *Public Service's motion for summary judgment* [#79], Exhibit B-3, or in the copy of the P & A Agreement included with Colonial's motion for summary judgment, *Colonial's motion for summary judgment* [#75], Exhibit O.  I conclude, therefore, that the parties do not consider Schedule A to be relevant to the present dispute.

use Colonial to service the Portfolio Loans and is not obligated to pay Colonial for loan servicing.  Further, PSCU and NCUA argue the contracts under which Colonial provided loan servicing to Norlarco on the Portfolio Loans were repudiated by the NCUA.

## IV.  COLONIAL'S CLAIMS & PSCU'S COUNTERCLAIMS

Colonial asserts five claims for relief.  In its first claim for relief, Colonial seeks a declaratory judgment declaring that the Servicing Agreement is valid, binding, and enforceable between Colonial and PSCU.  In its second claim for relief, Colonial asserts a claim for breach of contract against PSCU and Norlarco.  Colonial alleges that PSCU's ownership of the Portfolio Loans is subject to the terms of the Servicing Agreement.  In addition, Colonial alleges that PSCU has ratified and affirmed the Servicing Agreement through its actions, inactions, and statements, and has breached or anticipatorily breached the terms of the servicing agreement.  In its third claim for relief, Colonial seeks a declaratory judgment declaring that, under the terms of the Mortgage Ease Agreement and the Servicing Agreement, Colonial has a continuing property right that consists, in essence, of the right to service the Portfolio Loans and to be compensated, under the terms of the agreements, for its services.  In its fourth claim for relief, Colonial seeks a declaratory judgment declaring that the Servicing Agreement and related agreements constitute a "qualified financial contract," a term of art under the Federal Credit Union Act, and that Colonial has continuing, valid, and enforceable rights under the Servicing Agreement.  Qualified financial contracts receive substantial protections under the Federal Credit Union Act, and Colonial relies on these protections to argue that the Servicing Agreement is enforceable against PSCU.  In its fifth claim for relief, Colonial seeks a judgment for allowance of a claim it filed with the NCUA in which

Colonial sought damages based on the NCUA's repudiation of the Servicing Agreement. The NCUA previously denied Colonial's claim.

PSCU asserts two counterclaims against Colonial.  In its first counterclaim, PSCU seeks an order requiring Colonial to turn over property belonging to PSCU but wrongfully retained by Colonial.  Generally, PSCU alleges that this properly consists of Norlarco loan documents, books, records, and escrow account monies related to the Portfolio Loans.  In its second counterclaim, PSCU seeks a judgment requiring Colonial to pay PSCU money retained by Colonial for services Colonial claims to have provided PSCU under the Servicing Agreement after the Portfolio Loans were transferred to PSCU.

In its motion for summary judgment, Colonial seeks summary judgment in its favor on its second through fifth claims for relief.  In its two motions for summary judgment, PSCU seeks judgment in its favor on Colonial's first, second, third, and fourth claims for relief and on PSCU's two counterclaims.  In its motion for summary judgment, the NCUA seeks judgment in its favor on the three claims asserted against the NCUA, Colonial's third, fourth, and fifth claims for relief.  All of Colonial's claims and both of PSCU's counterclaims are based on the same facts and present closely related legal issues.  Therefore, I analyze the legal issues first.  With that analysis in place, I then address the parties' motions for summary judgment.

## V.  NCUA'S POWERS & QUALIFIED FINANCIAL CONTRACTS

When a credit union fails, the NCUA has authority to become the liquidating agent of the credit union. 12 U.S.C. § 1787(b)(2)(A).  The NCUA succeeds to the "rights, titles, powers and privileges of the credit union."  § 1787(b)(2)(A)(I).  As the

liquidating agent for a failed credit union, the NCUA is required to "pay all valid obligations of the credit union" in accordance with the prescriptions and limitations of the Federal Credit Union Act. § 1787(b)(2)(F). Under § 1787(c)(1), the NCUA has the authority to repudiate or disaffirm contracts into which the credit union entered before the liquidating agent was appointed. The NCUA may repudiate a contract to which the credit union is a party, the performance of which the NCUA determines to be burdensome, and the repudiation of which will promote the orderly administration of the credit union's affairs. § 1787(c)(1). In this case, PSCU and the NCUA argue that the NCUA never transferred the Servicing Agreement and Mortgage Ease Agreement to PSCU. In addition, PSCU and the NCUA argue that the NCUA validly repudiated the Servicing Agreement and, to the extent relevant, the Mortgage Ease Agreement and that, therefore, PSCU is not obligated under those agreements.

However, the NCUA's powers of repudiation and powers to transfer the assets of an insolvent credit union are limited with regard to a class of contracts known as qualified financial contracts (QFC). For example, if the NCUA repudiates a QFC, then a specialized measure of damages for the repudiation is applicable. § 1787(c)(3)(C). If the NCUA transfers assets or liabilities of a credit union that include any QFC, then the NCUA transfer must include all claims of the contracting party against the credit union which are based on the QFC. § 1787(c)(9)(A)(I). Colonial argues that the Servicing Agreement and the Mortgage Ease Agreement constitute a QFC or created QFCs tied to each of the Portfolio Loans. On this basis, Colonial argues that Norlarco's obligations under the servicing agreement were transferred to PSCU when the NCUA transferred the Portfolio Loans to PSCU.

8

The statutory definition of a QFC  includes "any securities contract, forward contract, [or] repurchase agreement . . . ." 12 U.S.C. §1787(c)(8)(D)(i). The statutory definition of the term "securities contract" includes, *inter alia*, a contract for the purchase, sale, or loan of ... a mortgage loan, any interest in a mortgage loan, a group or index of ... mortgage loans or interest therein (including any interest therein or based on the value thereof) or any option on any of the foregoing, including any option to purchase or sell any such ... mortgage loan, interest, group or index, or option and including any repurchase or reverse repurchase transaction . . . ."  12 U.S.C. § 1787(c)(8)(D)(ii)(I).  In 2004, the prior definition was further broadened to include "any other agreement or transaction that is similar to any agreement or transaction referred to in this clause[.]" 12 U.S.C. § 1787(c)(8)(D)(ii)(VIII).

Colonial argues that it holds an interest in each of the Portfolio Loans based on the Servicing Agreement and the Mortgage Ease Agreement and that these interests constitute QFCs.  If Colonial is correct, then the NCUA's transfer of the Portfolio Loans to PSCU must include all claims of Colonial against Norlarco that are based on the QFCs.  § 1787(c)(9)(A)(I).

### VI.  COLONIAL'S AGREEMENTS WITH NORLARCO ARE NOT QFCs

Again, PSCU and the NCUA argue that Colonial's agreements with Norlarco do not create QFCs because those agreements are service contracts and do not constitute the purchase by Colonial of an interest in the Portfolio Loans.  Colonial argues that its agreements with Norlarco concerning the Portfolio Loans are QFCs because the agreements constitute contracts for Colonial's purchase of an interest in each of the Portfolio Loans.  I conclude that the Servicing Agreement and Mortgage Ease

Agreement are service contracts, that, as such, they do not reflect the purchase of an interest in the Portfolio Loans and that, therefore, they are not QFCs.

<u>A.  Nature of Mortgage Servicing Obligations & Interests</u>

The parties agree that an agreement to service a mortgage sometimes is tied to an interest in a mortgage loan being serviced.  Again, under §1787(c)(8)(D)(ii)(I), an interest in a mortgage loan is a QFC.  One means of creating such an interest is when the owner of a mortgage loan, sometimes called the lead lender, transfers a percentage of the loan to another, often 50% to 95% of the loan, while retaining some interest in the loan for itself as well as the right to service the loan.  ***See AmerUs Bank v. Pinnacle Bank***, 51 F.Supp.2d 994, 999 (S.D.Iowa 1999).  In such a transaction, the lead lender retains an interest in the loan and agrees to service the loan by collecting the loan payments from the borrower and allocating the payments between itself and the other owner or owners of the loan.  ***Id***.  In the alternative, a lender can choose to sell the whole loan to another, retain no interest in the loan, and retain no right or obligation to service the loan.  ***Id***.

In contrast, an agreement and obligation to service a mortgage loan can be created without also creating a concomitant interest in the underlying loan.  In this circumstance, a servicer simply contracts to provide loan servicing on certain loans for a fee without also holding an interest in the underlying loans.  For example, in ***AmerUs Bank v. Pinnacle Bank***, AmerUs Bank sold a portfolio of mortgage loans to Indiana Federal Bank for Savings.  51 F.Supp.2d at 996.  At the time of the sale, the parties also executed a loan servicing agreement in which AmerUS agreed to service the loans being purchased by Indiana Federal.  ***Id***.  Examining the loan sale agreement and the

servicing agreement, the trial court concluded that all of AmerUs's interest in the loans had been sold to Indiana Federal, that AmerUs "no longer maintained any interest in these mortgages, and was only entitled to compensation for its actions of servicing the loans pursuant to the Loan Servicing Agreement." *Id.*, p. 1000.

In short, a contract to provide loan servicing on a mortgage loan does not necessarily create a partial interest in the underlying loan itself.  However, in some circumstances, an agreement to service a mortgage loan is tied to a partial interest in the underlying loan.

<u>B.  Applicable Principles of Contract Construction</u>

The interpretation of an unambiguous contract is a question of law for the court, and may be decided on summary judgment. ***Public Service Co. v. Burlington Northern R.R. Co.***, 53 F.3d 1090, 1096 (10th Cir. 1995); ***see also Relative Value Studies, Inc. v. Mc-Graw-Hill Cos., Inc.***, 981 P.2d 687, 690 (Colo. App. 1999) (the determination of whether a contract is ambiguous and the construction of an ambiguous contract are questions of law for the court.)  In ascertaining whether contract provisions are ambiguous, the Colorado Supreme Court recently noted that

> the instrument's language must be examined and construed in harmony with the plain and generally accepted meaning of the words employed. Written contracts that are complete and free from ambiguity will be found to express the intention of the parties and will be afforded their plain language.  Extrinsic evidence is only admissible to prove intent where there is an ambiguity in the terms of the contract.

*Ad Two, Inc. v. City & County of Denver,* 9 P.3d 373, 376 (Colo. 2000).  Contract terms are ambiguous "when they are susceptible to more than one reasonable interpretation." *Id.*  In the absence of such ambiguity, a court "will not look beyond the four corners of

the agreement to determine the meaning intended by the parties." *Id.* at 376-77.

Further, to the extent a contract is ambiguous, a court will construe the ambiguous terms against the drafter. ***See, e.g., U.S. Fidelity & Guar. Co. v. Budget Rent-A-Car Systems, Inc.***, 842 P.2d 208, 211 (Colo.1992).  In this case, it is undisputed that Colonial drafted both the Mortgage Ease Agreement and the Servicing Agreement. *Public Service's reply* [#107], Exhibit B-6 (Motley deposition), pp. 112, 130 - 132, 181 - 184.  To the extent there are any ambiguities in these agreements, they must be construed against Colonial.

### C. Analysis of Colonial's Contracts with Norlarco

The terms of the relevant contracts are the most important evidence of the nature of the parties' rights and obligations under the contracts between Colonial and Norcalo. The terms of the agreements indicate consistently that they do not concern the purchase of an interest in the Portfolio loans by Colonial.  Rather, they indicate that Colonial agreed to provide services for a fee, without acquiring an interest in the Portfolio Loans.

First, I note that the Mortgage Ease Contract was terminated automatically when the NCUA closed Norlarco.  Paragraph 6 b) of the Mortgage Ease Agreement provides that "(t)his Agreement will automatically terminate upon termination or expiration of any approval or license of [Norlarco] or [Colonial] required by law to perform the services required of [Norlarco] or [Colonial] by this Agreement."*Mortgage Ease Agreement*, ¶ 6 b).  Under § 1787, the NCUA was authorized to close Norlarco and appoint itself the liquidating agent for Norlarco.  On February 29, 2008, the NCUA placed Norlarco into involuntary liquidation and appointed itself as the liquidating agent for Norlarco.  This

action by the NCUA effectively terminated Norlarco's authorization to do business and,

therefore, automatically terminated the Mortgage Ease Agreement.  Colonial cannot rely

on the continuing efficacy of the Mortgage Ease Contract as a basis for its claims.

Second, the Servicing Agreement summarizes its content as an agreement

"under which the Servicer [Colonial] offers to service and the Credit Union [Norlarco]

agrees to retain Adjustable and fixed rate closed and first and second residential

mortgage loans on real estate . . . ."  *Servicing Agreement*, ¶ II.  Consistent with the

position of PSCU and the NCUA, this sentence indicates that Norlarco would "retain" or

own the mortgage loans and Colonial would service the loans.  It is undisputed that the

Portfolio Loans were funded at closing with Norlarco's funds, and closed in Norlarco's

name.  Further, the Servicing Agreement contains no language of bargain and sale

involving the transfer of a defined interest in the underlying loans.

Third, the Servicing Agreement addresses the possibility that Norlarco would sell

all or part of its interest in a mortgage loan covered by the Servicing Agreement.

Paragraph XIV addresses specifically the possibility that Norlarco might sell 100% of a

mortgage to another party.  "In the event 100% of the mortgage is sold, Servicer

[Colonial] warrants that it will remit all principal and interest installments collected under

the mortgage directly to such third party [the buyer]" after deduction of service fee by

Colonial.  *Servicing Agreement*, ¶ XIV.  Similarly, paragraph XXI provides that Norlarco

"may at any time sell any mortgage serviced under this Agreement or under any

corresponding agreement with (Colonial), provided that (Colonial) shall retain the right

to service the mortgage for any subsequent investor."  *Servicing Agreement*, ¶ XXI.

Consistent with the position of PSCU and the NCUA, paragraph XIV indicates that

Norlarco might own 100% of a mortgage covered by the Servicing Agreement and makes no provision for the possibility that Colonial might own any interest in a mortgage loan covered by the agreement.  Similarly, paragraph XXI acknowledges Norlarco's ability to sell a mortgage, an action that is possible only if Norlarco has an ownership interest in the mortgage.  Paragraph XXI acknowledges also Colonial's "right to service the mortgage for any subsequent investor." *Servicing Agreement*, ¶ XXI.  This provision is consistent with Colonial's role as a loan servicer under a contract to service the loans, rather than a party with a partial interest in the mortgages.  Below, I address Colonial's arguments to the contrary.

Fourth, paragraph XV of the Servicing Agreement, which addresses compensation of Colonial, provides that

> (s)uch compensation shall be earned, computed and payable as of the time interest on each individual mortgage is paid to (Norlarco) . . . . Compensation shall be earned and computed only upon mortgages on which payment of interest actually occurs.  No additional compensation shall be payable to (Colonial) in the event of termination of this Agreement, except as provided

*Servicing Agreement*, ¶ XV.  This provision is consistent with a contract under which Colonial agreed to provide services and Norlarco agreed to pay for those services. Nothing in this provision indicates that Colonial, in addition to providing loan servicing, also held an ownership interest in the loans that it serviced.

Colonial makes several arguments in support of its contention that the Mortgage Ease Agreement and the Loan Servicing Agreement created a percentage interest in each of the Portfolio Loans and Colonial owns that interest in each of the loans.  First, Colonial argues that its agreements with Norlarco provide that Colonial is entitled to a servicing fee of .25% of the principal balance of all loans originated under the

14

agreements.  *Colonial motion for summary judgment* [#75], p. 4.  Colonial cites

paragraph 11 b) of the Mortgage Ease Agreement, but I find no such provision in

paragraph 11 b). Colonial cites also the addendum to the Servicing Agreement.  The

addendum provides that the "fee for servicing each loan shall be the greater of: $75.00

per year; or 0.250% for Fixed Rate Loans per year; or 0.375% for Adjustable Rate

Loans per year."  *Servicing Agreement*, final page. This provision is inexplicit because is

cites specific percentage figures, but it does not state that these figures are percentages

of the principal balance of the loan, the interest payment made on the loan, or some

other amount.  Notably, the payments to Colonial are described as a "fee" rather than a

percentage interest in each loan.

The inexplicit provisions of the addendum must be read in conjunction with

paragraph XV of the Servicing Agreement, which addresses also compensation of

Colonial.  Paragraph XV provides that Colonial's compensation "shall be earned,

computed and payable as of the time interest on each individual mortgage is paid to

[Norlarco]."  *Servicing Agreement*, ¶ XV. The provisions of the addendum to the

Servicing Agreement read in conjunction ¶ XV, reflect an agreement by Colonial to

provide services and agreement by Norlarco to pay a "fee" for those services.  Notably,

the fee payable to Colonial can, in some circumstances, be a flat fee of 75 dollars.

*Servicing Agreement*, final page.   Such a flat fee is not consistent with Colonial's claim

that the agreement gives Colonial a percentage share of each loan.   Further, nothing in

the Servicing Agreement indicates that Colonial is entitled to any share of the value of a

loan if the borrower ceases to make payments on the loan.  Rather, the Servicing

Agreement provides that if foreclosure is required, then Norlarco will take title to the

foreclosed property in its name and will reimburse Colonial for any reasonable expenses incurred by Colonial in the foreclosure proceedings.  *Id.*, ¶ XIII.  Nothing in the Servicing Agreement indicates that Colonial is entitled to recover anything for its purported partial interest in the loan when recovery on the debt is made via foreclosure rather than regular payments.  All of these provisions are consistent with a fee for service contract rather than a transfer of a partial interest in each loan to Colonial.

Second, Colonial notes that it arranged and oversaw all of the tasks necessary to originate, underwrite, and close the loans.  At closing, Colonial received what it calls "minor" underwriting and administration fees.  *Colonial's motion for summary judgment* [#75], p. 18.  According to Colonial, its agreements with Norlarco made economic sense for Colonial only because Colonial obtained valuable mortgage servicing rights for each loan.  According to Colonial, it "purchased its interest in the loans through its loan origination services and expertise."  *Id.*  Colonial's loan origination services and expertise might be seen as adequate consideration for transfer of a partial interest in each of the Portfolio Loans.  However, Colonial's view of the "economic sense" of the contracts cannot be used to change the terms of the contracts.  The terms of the contracts do not reflect a transfer to Colonial of a partial interest in the Portfolio Loans.  The fact that such a transfer might have made economic sense for Colonial does not alter the terms of the contracts.

Third, Colonial argues that the Notice of Assignment, Sale, or Transfer of Servicing Rights delivered to the borrowers at the closing of each of the Portfolio Loans reflects a conveyance of an interest in each loan, in the form of a mortgage servicing right. *Colonial motion for summary judgment*, p. 15; Exhibit I.  Whether the language in

this notice can be read as consistent with the a transfer of an interest in the loan associated with the notice is of little consequence.  The notice is not part of the contracts between Colonial and Norlarco and is not signed by either Colonial or Norlarco.  Further, as PSCU notes, the text of the notice is consistent with PSCU's position that servicing duties were assigned to Colonial under the Servicing Agreement. Such an assignment does not demonstrate a transfer of an interest in the underlying loan to Colonial.

Fourth, Colonial argues that the accounting treatment of the Mortgage Ease Agreement and the Servicing Agreement required by applicable accounting standards demonstrates that Colonial has an interest in the Portfolio Loans.  Like the Notice of Assignment, Sale, or Transfer of Servicing Rights, the details of the accounting treatment required by applicable accounting standards cannot serve to alter the terms of the contracts between Colonial and Norlarco.  These standards are not part of the contracts.  Particularly when the plain meaning of contract terms is reasonably clear, as it is here, the fact that accounting standards may require a certain treatment of the contract does not serve to alter the meaning of those terms.

Finally, I have reviewed Colonial's other arguments and evidence in support of its contention that its agreements with Norlarco created and conveyed to Colonial an interest in each of the Portfolio Loans, rather than creating a fee for services contract. As with the arguments discussed above, I conclude that Colonial's other arguments do not demonstrate that Colonial holds an interest in each of the Portfolio Loans.

### D.  Conclusion

An agreement to service a mortgage loan can be tied to a partial interest in the

underlying loan.  However, a contract to provide loan servicing on a mortgage loan does not necessarily create a partial interest in the underlying loan.  The Mortgage Ease Agreement and Servicing Agreement at issue in this case contain plain and generally unambiguous language.  Reading these contracts and applying the plain and generally accepted meaning of the words employed, I conclude as a matter of law that the contracts do not convey to Colonial any interest in the Portfolio Loans.  Rather, these contracts create a fee for services agreement between Colonial and Norlarco.  The fact that the fees to be paid to Colonial are calculated, to some extent, based on the amount paid or due on the underlying loan does not, in the context of these contracts, convey to Colonial a partial interest in the underlying loans.

A QFC includes an interest in a mortgage loan, including an interest based on the value of the loan.  12 U.S.C. § 1787(c)(8)(D)(ii)(I).  Because Colonial's agreements with Norlarco do not convey to Colonial any interest in the Portfolio Loans, I conclude as a matter of law that the Mortgage Ease Agreement and the Servicing Agreement are not QFCs as defined in § 1787(c)(8)(D)(ii)(I).

## VII.  PSCU IS NOT BOUND BY THE
## MORTGAGE EASE AND SERVICING AGREEMENTS

Without wishing to perseverate, on February 29, 2008, the NCUA entered into a Purchase and Assumption Agreement (P & A Agreement) with PSCU.  *PSCU's motion for summary judgment* [#79], Exhibit B-3.  Under the P & A Agreement, PSCU purchased from the NCUA certain Norlarco assets and agreed to assume certain Norlarco liabilities.  PSCU did not agree to assume Norlarco's liabilities under the Mortgage Ease Agreement or the Servicing Agreement.  By a letter dated April 15, 2008, the NCUA, acting as liquidating agent for Norlarco, repudiated and canceled any

18

contract between Colonial and Norlarco.  *Complaint* [#1], Exhibit C.

Colonial argues that PSCU is bound by the Servicing Agreement because (1) the Servicing Agreement is a QFC and, therefore, necessarily was transferred to PSCU when PSCU acquired the Portfolio Loans; (2) PSCU has ratified the Servicing Agreement by accepting services from Colonial; (3) under the terms of the Servicing Agreement, the agreement was transferred effectively to PSCU before the NCUA repudiated the Servicing Agreement and, thus, the repudiation is not effective; and (4) under §4-3-306, C.R.S., PSCU took the Portfolio Loans subject to Colonial's property interest in the loans.  I disagree.

Again, if the NCUA transfers assets or liabilities of a credit union that include any QFC, then the NCUA transfer must include all claims of the contracting party against the credit union which are based on the QFC.  § 1787(c)(9)(A)(I).  I have concluded that the Portfolio Loans do not include QFCs based on the Mortgage Ease and Servicing Agreements.  Therefore, when the Portfolio Loans were transferred to PSCU, Norlarco's obligations under these agreements were not transferred to PSCU based on the requirements of § 1787(c)(9)(A)(I).

Colonial alleges in its breach of contract claim against PSCU that PSCU has "ratified and affirmed the Servicing Agreement through its actions, inactions and/or statements."  *Complaint* [#1], ¶ 29.  Addressing this claim, PSCU argues that, after the transfer of the Portfolio Loans to PSCU, it has been compelled to rely on Colonial's servicing of the Portfolio loans.  Shortly after the Portfolio Loans were transferred to PSCU, it told Colonial that PSCU wanted to service the Portfolio loans itself.  *Public Service's reply* [#107], Exhibit B-6 (Motley deposition), pp. 56 - 58.  A PSCU

representative demanded that Colonial turn over all data and funds necessary for PSCU to begin servicing the loans.  *Id.*, Exhibit B-7 (Koan deposition), pp. 110 -112.  Colonial refused and has continued to service the loans.  PSCU asserts, and Colonial does not dispute, that PSCU has no reasonable alternative but to let Colonial service the loans until this dispute is resolved.  For example, PSCU cannot properly service the loans without knowing to whom and in what amount each borrower owes payments for property taxes and insurance.  Colonial holds the escrow funds and the records of payments into and out of each escrow account for each of the Portfolio Loans and has refused to turn over these accounts and records to PSCU.  Under these circumstances, PSCU cannot service the loans properly and has no choice but the permit Colonial to continue servicing the loans.

PSCU argues that these circumstances do not constitute PSCU's ratification of the Servicing Agreement.  Colonial does not respond specifically to this argument.  I agree with PSCU's position.  Generally, a party's actions constitute ratification of a contract when those actions manifest affirmance of the contract rather than repudiation of the contract.  ***See, e.g., Bernhardt v. Hemphill***, 878 P.2d 107, 112 (Colo.App.1994); *Restatement (Second) of Contracts* § 175 (manifestation of assent voidable if induced by improper threat by the other party when threat leaves the victim no reasonable alternative).  Under the circumstances presented here, PSCU has no reasonable alternative but to accept Colonial's servicing of the Portfolio Loans, pending resolution of this dispute.  Given my analysis of the effect of the Servicing Agreement after the transfer of the Portfolio Loans to PSCU, I conclude that Colonial's refusal to provide PSCU with the information necessary for PSCU to service the loans was improper

because PSCU is not bound by the Servicing Agreement.  Further, PSCU communicated to Colonial PSCU's position that PSCU is not bound by the Servicing Agreement.  Under these circumstances, PSCU's actions cannot be seen as ratification of the Servicing Agreement.

Colonial argues also that the Servicing Agreement had not been repudiated on February 29, 2008, when the P & A Agreement between the NUCA and PSCU was executed, and PSCU accepted transfer of the Portfolio Loans from the NCUA.  With the transfer of the Portfolio Loans to PSCU, Colonial asserts, ¶ XXI of the Servicing Agreement required PSCU to accept the terms of the Servicing Agreement.  Paragraph XXI provides:

> [Norlarco] may at any time sell any mortgage serviced under this Agreement . . . provided that [Colonial] shall retain the right to service the mortgage for any subsequent investor.

This argument ignores the fact that the NCUA had the authority to separate the Servicing Agreement from the Portfolio Loans, because the Servicing Agreement is not a QFC.  The terms of the P & A Agreement between the NCUA and PSCU demonstrate that the NCUA made such a separation when it transferred the Portfolio Loans to PSCU but did not transfer the Servicing Agreement to PSCU.  Although the Servicing Agreement was in effect at the time of the transfer, February 29, 2008, it never was transferred to PSCU.  As required by § 1787(c)(2), the NCUA validly repudiated the Servicing Agreement within a reasonable time after its appointment as liquidating agent.

Finally, Colonial argues that PSCU accepted the Portfolio Loans with notice of the Servicing Agreement and that, therefore, notice of Colonial's claim of a partial ownership interest in the loans or their proceeds.  Under §4-3-306, C.R.S., a "person

taking an instrument . . . is subject to a claim of a property or possessory right in the instruments or its proceeds . . . ." I reiterate my earlier conclusion that the Servicing Agreement did not give Colonial a partial ownership interest in the Portfolio Loans or their proceeds. I conclude also that the Servicing Agreement did not give PSCU notice of a claim that Colonial had such an interest in the promissory notes that are the basis of the Portfolio Loans. Thus, under §4-3-306, C.R.S., PSCU did not take the Portfolio Loans subject to a property interest of Colonial reflected in the Servicing Agreement.

In short, PSCU did not accept ownership of the Portfolio Loans subject to the terms of the Servicing Agreement. Therefore, by law PSCU is not bound by the terms of the Servicing Agreement.

### VIII. THE NCUA PROPERLY DENIED COLONIAL'S CLAIM

On April 15, 2008, the NCUA sent Colonial notice of the NCUA's repudiation of Norlarco's contracts with Colonial. *Complaint*, Exhibit C. Repudiation of a contract by a liquidating agent "gives rise to an ordinary claim for breach of contract." **Lawson v. FDIC**, 3 F.3d 11, 15 (1st Cir. 1993) (addressing repudiation of contract by FDIC). However, the damages that can be recovered on such a claim are sharply limited under § 1787(c)(3):

(3) Claims for damages for repudiation

(A) In general

Except as otherwise provided in subparagraph (C) and paragraphs (4), (5), and (6), the liability of the conservator or liquidating agent for the disaffirmance or repudiation of any contract pursuant to paragraph (1) shall be–

(i) limited to actual direct compensatory damages; and

(ii) determined as of–

(I) the date of the appointment of the conservator or liquidating agent; or

(II) in the case of any contract or agreement referred to in paragraph (8), the date of the disaffirmance or repudiation of such contract or agreement.

(B) No liability for other damages

For purposes of subparagraph (A), the term "actual direct compensatory damages" does not include–

(i) punitive or exemplary damages;

(ii) damages for lost profits or opportunity; or

(iii) damages for pain and suffering.

12 U.S.C. § 1787(c)(3).

On May 21, 2008, Colonial submitted a claim to NCUA for approximately 500,000 dollars based on the NCUA's repudiation of the Servicing Agreement.  Under  § 1787(b)(3) - (5), a party to a repudiated contract may assert a claim against the NCUA based on the repudiation of the contract.  In its claim Colonial claimed that it was entitled to the two percent termination fee contained in the Servicing Agreement. *Servicing Agreement*, ¶ XVI D.  On August 22, 2008, the NCUA disallowed Colonial's claim.  The NCUA disallowed the claim because it concluded that Colonial's claim represented a claim for future lost profits.  *Complaint*, Exhibit E, p. 1.  Claims for lost profits are not permissible under § 1787(c)(3).  In its fifth claim for relief, Colonial brings a claim against the NCUA for improper denial of Colonial's claim.[5]

Given the terms of the Servicing Agreement and the undisputed facts in the

---

[5] In its motion for summary judgment [#72], the NCUA seeks specifically summary judgment on Colonial's fifth claim for relief.  In its response [#86], Colonial does not respond specifically to the NCUA's argument concerning the fifth claim for relief.

record, I conclude that the NCUA's denial of Colonial's claim was proper.  Paragraph XV of the Servicing Agreement provides that Colonial's compensation "shall be earned, computed and payable as of the time interest on each individual mortgage is paid to [Norlarco]."  Further, "(c)ompensation shall be earned and computed only upon mortgages on which payment of interest actually occurs."  It is undisputed that Colonial was compensated, as provided by the Servicing Agreement, for all services it provided through February 29, 2008, when the NCUA put Norlarco into involuntary liquidation and appointed itself as the liquidating agent for Norlarco.  The payments to Colonial prior to February 29, 2008, compensated Colonial for all fees it had earned prior to that date.  In these circumstances, Colonial's claim for the 500,000 dollar termination fee can be seen only as a claim for future lost profits or opportunity, a claim not allowable under § 1787(c)(3).

If the Mortgage Ease and Servicing Agreements created QFCs, then Colonial would benefit from a more generous compensation regime.  § 1787(c)(3)(C).  That more generous compensation regime is not applicable here because the Mortgage Ease and Servicing Agreements did not create QFCs.

## IX.  COLONIAL'S CLAIMS FOR RELIEF

Some of Colonial's claims are asserted against Norlarco.  Once the NCUA became the liquidating agent for Norlarco, the NCUA succeeded to the "rights, titles, powers and privileges of the credit union" and, to a limited extent, the obligations of the credit union.  § 1787(b)(2)(A)(I), (b)(2)(F).  Under the circumstances of this case, I conclude that Colonial's claims against Norlarco are claims against the NCUA as Norlarco's successor.  To the extent Colonial asserts claims against Norlarco, I conclude that the NCUA is the real party in interest as to the claims against Norlarco.

Therefore, I treat the NCUA's briefing and argument as addressing also Colonial's claims against Norlarco.

In its first claim for relief, Colonial seeks a declaratory judgment declaring that the Servicing Agreement is valid, binding, and enforceable against PSCU.  Viewing the undisputed facts in the record in the light most favorable to Colonial, I conclude that the Servicing Agreement is not enforceable against PSCU.  Therefore, PSCU's motion for summary judgment [#79] on Colonial's first claim for relief will be granted.

In its second claim for relief, Colonial asserts a claim for breach of contract against PSCU and Norlarco.  Colonial alleges that PSCU has ratified and affirmed the Servicing Agreement through its actions, inactions, and statements and that PSCU and Norlarco have breached or anticipatorily breached the terms of the servicing agreement.  Viewing the undisputed facts in the record in the light most favorable to Colonial, I conclude that the Servicing Agreement is not enforceable against PSCU and that, therefore, Colonial does not have a valid breach of contract claim against PSCU.  PSCU's motion for summary judgment [#79] on Colonial's second claim for relief must be granted, and Colonial's motion for summary judgment [#75] on its second claim for relief will be denied.

Colonial's breach of contract claim against Norlarco was resolved by Norlarco's successor, the NCUA, when the NCUA resolved the claim submitted to the NCUA by Colonial based on the NCUA's repudiation of the Servicing Agreement.  Addressing Colonial's fifth claim for relief, below, I will grant the NCUA's motion for summary judgment [#72] on Colonial's fifth claim for relief, which concerns the NCUA's denial of Colonial's claim.  This ruling will resolve also Colonial's breach of contract claim against Norlarco.  Therefore, I read the NCUA's motion for summary judgment [#72] as

addressing also Colonial's second claim for relief against Norlarco, and I will grant that motion as to Colonial's second claim for relief against Norlarco.  I will deny Colonial's motion for summary judgment [#75] on its second claim for relief.

In its third claim for relief, Colonial seeks a declaratory judgment declaring that, under the terms of the Mortgage Ease Agreement and the Servicing Agreement, Colonial has a continuing property right that consists, in essence, of the right to service the Portfolio Loans and to be compensated, under the terms of the agreements, for its services.  Viewing the undisputed facts in the record in the light most favorable to Colonial, I conclude that the Mortgage Ease and Servicing Agreements are service for fee agreements and do not create a continuing property interest in the Portfolio Loans. Therefore, I will grant the NCUA and PSCU's motions for summary judgment [#72 & 79] on Colonial's third claim for relief, and I will deny Colonial's motion for summary judgment [#75] on its third claim for relief.  Norlarco is named as a defendant in the third claim for relief.  Again, the NCUA is the legal successor to Norlarco, and I conclude that the NCUA's motion for summary judgment addresses this claim as asserted against Norlarco and that my resolution of the NCUA's motion for summary judgment resolves this claim as asserted against Norlarco.

In its fourth claim for relief, Colonial seeks a declaratory judgment declaring that the Servicing Agreement and related agreements constitute a "qualified financial contract" under § 1787, that Colonial is entitled to the benefits accorded to qualified financial contracts under § 1787, and that Colonial has continuing, valid, and enforceable rights under the Servicing Agreement.  Viewing the undisputed facts in the record in the light most favorable to Colonial, I conclude, as a matter of law, that the Mortgage Ease Agreement and Servicing Agreement are not qualified financial

contracts.  Therefore, I will grant the motions of NCUA and PSCU for summary judgment [#72 & 79] on Colonial's fourth claim for relief, and I will deny Colonial's motion for summary judgment [#75] on its fourth claim for relief.  My grant of the NCUA's motion on this claim resolves also this claim as asserted against Norlarco.

In its fifth claim for relief, Colonial seeks a judgment for allowance of the claim it asserted with the NCUA in which Colonial sought damages based on the NCUA's repudiation of the Servicing Agreement.  Viewing the undisputed facts in the record in the light most favorable to Colonial, I conclude that the NCUA's denial of Colonial's claim was proper under § 1787.  Therefore, I will grant the NCUA's motion for summary judgment [#72] on Colonial's fifth claim for relief, and I will deny Colonial's motion for summary judgment [#75] on its fifth claim for relief. My grant of the NCUA's motion on this claim also resolves this claim as asserted against Norlarco.

## X.  PSCU's COUNTERCLAIMS

In its first counterclaim, PSCU seeks an order requiring Colonial to turn over property belonging to PSCU but wrongfully retained by Colonial.  PSCU alleges that this properly consists of Norlarco loan documents, books, records, and escrow account monies related to the Portfolio Loans.  In its second counterclaim, PSCU seeks a judgment requiring Colonial to pay to PSCU money retained by Colonial for services Colonial claims to have provided PSCU under the Servicing Agreement.  These claims are founded on PSCU's contention that it is not obligated under the Servicing Agreement and that it is entitled to service the Portfolio Loans itself.  In its motion for summary judgment on its counterclaims [#74], PSCU seeks judgment in its favor on both of its counterclaims. In its response [#91] to PSCU's motion for summary judgment on its counterclaims, Colonial relies primarily on its position that PSCU is bound by the

Servicing Agreement and that, therefore, PSCU is not entitled to return of any documents, books, records, and escrow funds related to the Portfolio Loans.

For the reasons detailed in this order, I conclude as a matter of law that PSCU is not bound by the Servicing Agreement.  Therefore, PSCU is entitled to service the Portfolio Loans itself or to choose a different loan servicer.  With the NCUA's separation of the Servicing Agreement from the Portfolio Loans and proper repudiation of the Servicing Agreement, Colonial cannot properly insist on servicing the Portfolio Loans. In light of my legal conclusions in this order and viewing the undisputed facts in the record in the light most favorable to Colonial, I conclude that PSCU is entitled to summary judgment on its first counterclaim.  Absent an effective agreement with PSCU, Colonial has no lawful basis to retain the documents, books, records, and escrow funds related to the Portfolio Loans.  As owner of the Portfolio Loans, PSCU is entitled to possess the documents, books, records, and escrow funds related to the Portfolio Loans.  Therefore, I will grant PSCU's motion for summary judgment [#74] on its first counterclaim against Colonial.

In its motion for summary judgment on its second counterclaim, PSCU seeks the entry of judgment against Colonial and in favor of PCSU for 108,536.76 dollars.  PSCU contends that it is undisputed that this is the amount of compensation Colonial retained for itself from borrower's monthly payments on the Portfolio Loans from March 1, 2008, the day after the Portfolio Loans were transferred to PSCU, until January 19, 2010. This figure is based on two calculations.  First, Colonial has admitted that 84,941.81 dollars is the total of compensation Colonial retained from payments on the Portfolio Loans from March 1, 2008 through August 19, 2009.  *Reply* [#108], Exhibit B-11 (request for admission no. 12).  Second, based on an average of the monthly amounts

retained by Colonial from March 19, 2008 through August 19, 2009, PSCU estimated a projected average of the monthly service fees and late fees retained by Colonial from payments on the Portfolio Loans from August 20, 2009, to January 19, 2009.  The total projected figure for this period is 23,594.95 dollars.  Colonial has admitted that PSCU's calculation results in an approximate projection of Colonial's revenues on the Portfolio Loans for this period.  *Reply* [#108], Exhibit B-11 (request for admission no. 13).

Colonial argues that, even if PSCU is not bound by the Servicing Agreement, PSCU's claim for return of all of the fees collected by Colonial since March 1, 2008, is improper.  Colonial argues that PSCU has not accounted for the costs PSCU would have incurred if PSCU had serviced the loans itself during this period, and has not accounted for the value of the services provided by Colonial to PSCU during this period.  Colonial contends that refund of all of the fees collected by Colonial during this period would amount to a windfall to PSCU.

In light of my legal conclusions in this order and viewing the undisputed facts in the record in the light most favorable to Colonial, I conclude that PSCU is entitled to summary judgment on its second counterclaim.  The undisputed facts in the record demonstrate that Colonial withheld 108,536.76 dollars from payments due to PSCU on the Portfolio Loans from March 1, 2008, through January 19, 2010.  The Servicing Agreement is not binding against PSCU and, therefore, Colonial has no legal basis to withhold these funds from the payments due to PSCU.  Colonial has presented no evidence to support its contention that the amount claimed by PSCU should be reduced by the amount of the expenses PSCU would have incurred had PSCU serviced the Portfolio Loans during this time.  Further, Colonial has not asserted a claim for quantum meruit or any other claim seeking to recover the value of the services Colonial has

provided to PSCU during this period.  Therefore, I will grant PSCU's motion for summary judgment [#74] on its second counterclaim against Colonial.

## XI.  CONCLUSION & ORDERS

Viewing the undisputed facts in the record in the light most favorable to Colonial, I conclude that the Mortgage Ease Agreement and the Servicing Agreement between Colonial and Norlarco were not and did not create qualified financial contracts, as that term is defined in 12 U.S.C. §1787(c)(8)(D).  The NCUA properly and effectively conveyed the Portfolio Loans to PSCU and retained the Servicing Agreement, effectively separating the Servicing Agreement from the Portfolio Loans.  The NCUA properly repudiated the Servicing Agreement and properly denied Colonial's claim for damages based on the repudiation of the Servicing Agreement.  There is no other valid basis to conclude that PSCU is bound by the terms of the Servicing Agreement.  On these bases, I grant the defendants' motions for summary judgment as to Colonial's five claims for relief, and I deny Colonial's motion for summary judgment on those claims.

Absent a valid agreement between Colonial and PSCU, PSCU is entitled to an order requiring Colonial to deliver to PSCU all of the documents, books, records, and escrow funds held by Colonial that are related to the Portfolio Loans.  Absent a valid agreement between Colonial and PSCU, PSCU also is entitled to recover the mortgage servicing fees withheld by Colonial from payments due to PSCU from March 1, 2008, through January 19, 2010.  The amount due PSCU is 108,536.76 dollars.

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Motion for Summary Judgment Field by NCUA as Liquidating Agent for Norlarco Credit Union** [#72] filed October 30, 2009, is **GRANTED**;

2. That the **Motion for Summary Judgment on all Counterclaims of**

**Defendant, Public Service Employees Credit Union, Against Plaintiff, Colonial Savings, F.A.** [#74] filed October 30, 2009, is **GRANTED**;

3.  That **Plaintiff Colonial Savings, F.A.'s Motion for Summary Judgment** [#75] filed October 30, 2009, is **DENIED**;

4.  That the **First Amended Motion for Summary Judgment on Plaintiff's Claims by Defendant, Public Service Employees Credit Union** [#79] filed November 4, 2009, is **GRANTED**;

5.  That **JUDGMENT SHALL ENTER** in favor of the defendants, Public Service Employees Credit Union, Doing Business as Public Service Credit Union, a Colorado Nonprofit Corporation, Norlarco Credit Union, a Colorado Nonprofit Corporation, and the National Credit Union Administration, as Liquidating Agent for Norlarco Credit Union, and against the plaintiff, Colonial Savings, F.A., a Federal Savings Association, on the plaintiffs five claims for relief, as stated in the plaintiff's Complaint [#1] filed October 21, 2008;

6.  That **JUDGMENT SHALL ENTER** in favor of the defendant and counterclaimant, Public Service Employees Credit Union, Doing Business as Public Service Credit Union, a Colorado Nonprofit Corporation, and against the plaintiff and counterclaim defendant, Colonial Savings, F.A., a Federal Savings Association, on the first counterclaim of defendant and counterclaimant, Public Service Employees Credit Union, as stated in the Answer and Counterclaims of Defendant, Public Service Employees Credit Union [#27] filed March 19, 2009;

7.  That the plaintiff and counterclaim defendant, Colonial Savings, F.A., a Federal Savings Association, **SHALL DELIVER** to the defendant and counterclaimant, Public Service Employees Credit Union, Doing Business as Public Service Credit Union,

a Colorado Nonprofit Corporation, all documents, books, records, and escrow funds related to the loans acquired by defendant and counterclaimant, Public Service Employees Credit Union, from defendant, the National Credit Union Administration, under the terms of the Purchase and Assumption Agreement, which is shown in the record as Exhibit B to *PSCU's motion for summary judgment* [#79], filed November 4, 2009;

8.   That **JUDGMENT SHALL ENTER** in favor of the defendant and counterclaimant, Public Service Employees Credit Union, Doing Business as Public Service Credit Union, a Colorado Nonprofit Corporation, and against the plaintiff and counterclaim defendant, Colonial Savings, F.A., a Federal Savings Association, on the second counterclaim of defendant and counterclaimant, Public Service Employees Credit Union, as stated in the Answer and Counterclaims of Defendant, Public Service Employees Credit Union [#27] filed March 19, 2009, in the amount of 108,536.76 dollars;

9.   That to ensure reasonably prompt compliance with these orders, the court **SHALL  RETAIN** jurisdiction over the parties and this case for ninety (90) days from the date of this order;

10.   That the defendants are **AWARDED** their costs, to be taxed by the Clerk of the Court pursuant to Fed.R.Civ.P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated January 27, 2010, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge